```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF IOWA
                        CENTRAL DIVISION

- - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,  :
                           :
          Plaintiff,       :      Criminal No. 4:16-34
                           :
     vs.                   :
                           :
NOAH THOMAS ZENOR,         :      TRANSCRIPT OF SENTENCING
                           :
          Defendant.       :
- - - - - - - - - - - - - -X
```

                         First Floor, South Courtroom
                         United States Courthouse
                         123 East Walnut Street
                         Des Moines, Iowa  50309
                         Wednesday, January 18, 2017
                         1:42 p.m.


BEFORE:  THE HONORABLE REBECCA GOODGAME EBINGER, Judge.


APPEARANCES:

For the Plaintiff:            CRAIG P. GAUMER, ESQ.
                             Assistant U.S. Attorney
                             U.S. Courthouse Annex, Suite 286
                             110 East Court Avenue
                             Des Moines, Iowa  50309-3899


For the Defendant:            NICK SARCONE, ESQ.
                             Stowers & Sarcone
                             West Glen Town Center
                             650 South Prairie View Drive
                             Suite 130
                             West Des Moines, Iowa  50266


                    Terri L. Martin, CSR, RPR, CRR
                     United States Court Reporter
                      Room 189, U.S. Courthouse
                       123 East Walnut Street
                      Des Moines, Iowa  50309

E X H I B T I T S

| DEFENDANT'S EXHIBIT NUMBERS: | OFFERED | RECEIVED |
|---|---|---|
| A - Letters and medical documentation | 7 | 8 |

1                    P R O C E E D I N G S

2              (In open court, with defendant present.)

3              THE COURT:  Thank you.  Please be seated.

4              We're here in the matter of the United States of

5    America versus Noah Thomas Zenor.  This is Case No. 4:16-CR-34.

6    This is the time and date set for sentencing in this matter.  My

7    name is Rebecca Goodgame Ebinger, and I'm the district court

8    judge that's been assigned to preside over this matter.

9              Counsel, please identify themselves for purposes of

10   the record.

11             MR. GAUMER:  Craig Gaumer for the United States of

12   America, Your Honor.

13             MR. SARCONE:  Thank you, Your Honor.

14             Nick Sarcone on behalf of Mr. Zenor.

15             THE COURT:  Thank you.

16             As counsel is aware, I like to start things on time,

17   and I apologize for making the parties wait.  I did not receive

18   the letters on behalf of the defendant until moments before I

19   was to come in here.  I have now received those and I have now

20   read those.

21             Mr. Sarcone, did you provide copies of those to the

22   government?

23             MR. SARCONE:  Yes.  In fact, as those came in to me,

24   they were provided to the government, yes.

25             THE COURT:  Thank you.

1          Then we are prepared to begin.

2          Mr. Zenor, I'll begin with talking to you.  Do you

3    recall appearing before Magistrate Judge Bremer on August 8th of

4    last year and entering a plea of guilty to one count of

5    possession of child pornography in violation of Title 18, United

6    States Code, Section 2252(a)(4)(B)?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And at that time you were advised that the

9    maximum potential penalty you could face for that crime was 20

10   years of incarceration.

11         Do you recall that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And do you understand that you're here

14   today for purposes of being sentenced on your plea of guilty

15   that I accepted on report and recommendation of the magistrate

16   judge back on August 30th of last year?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Do you continue to acknowledge that you

19   are, in fact, guilty of the crime to which you pled guilty,

20   possession of child pornography?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Before I proceed with the hearing, I want

23   to make sure that you're able to fully participate here today.

24         Are you currently under the influence of alcohol?

25         THE DEFENDANT:  No.

1          THE COURT:  Are you under the influence of any illegal

2   substances?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Are you taking any prescription

5   medications?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And what medications are you taking, sir?

8          (Counsel conferring with defendant.)

9          THE DEFENDANT:  I'm taking -- currently taking

10   Omeprazole, which is a nausea medicine to help with my Crohn's

11   Disease.  I'm also taking a steroid for my intestines to help

12   strengthen them where the Crohn's has set in, and I also have a

13   nightly medicine called Trazodone, which is to help me with my

14   sleep.

15          THE COURT:  And were all of those medications

16   prescribed to you by a medical professional with whom you have a

17   treating relationship?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Are you taking all of those medications as

20   prescribed?

21          THE DEFENDANT:  Yes.

22          THE COURT:  It's a little bit of a different question.

23   Are there any medications that you have been prescribed that

24   you're not taking?

25          THE DEFENDANT:  No.

1          THE COURT:  Is there anything about your use of those

2   medications or the ailments that they are meant to treat that

3   would negatively affect your ability to understand these

4   proceedings here today?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Are you suffering from any other mental or

7   physical ailment other than the ones we just discussed, your

8   asthma, your Crohn's Disease, and a difficulty sleeping, that

9   would negatively affect your ability to understand the

10  proceedings here today?

11         THE DEFENDANT:  No, Your Honor.

12         THE COURT:  The most important thing is that you

13  understand these proceedings, sir.  If at any time during the

14  proceedings you don't understand something I say or you have a

15  question, would you please stop me and let me know?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Thank you.

18         Then the next thing to discuss are the materials that

19  the court has reviewed in anticipation of this hearing.  I have

20  reviewed the presentence investigation report that was prepared

21  by the probation office.  I should note that Priscilla Davidson

22  from the probation office is here with us in court.  She is the

23  writer of the presentence investigation report.

24         I've reviewed that presentence investigation report.

25  I have reviewed the sentencing memoranda filed by the defense

1  with all of its attachments.  I've reviewed the sentencing

2  memorandum submitted by the government.  I reviewed the victim

3  impact statements that have been provided to the court, and I

4  have now reviewed the letters that were provided to me

5  immediately prior to this hearing.

6           Are there any other materials that the court should

7  have received at this time that I haven't mentioned, Mr. Gaumer?

8           MR. GAUMER:  No, Your Honor.

9           THE COURT:  Mr. Sarcone?

10          MR. SARCONE:  No, Your Honor.

11          THE COURT:  Thank you.

12          The materials provided immediately prior, in addition

13  to being letters, also include some medical documentation.

14  Mr. Sarcone, how did you wish to present those to the court?

15          MR. SARCONE:  Your Honor, I would just offer those as

16  an exhibit for sentencing purposes.  We could label it as

17  Defendant's Exhibit 1 if that's all right with the court.

18          THE COURT:  Typically it would be A.

19          MR. SARCONE:  Or A, that's fine.

20                          (Defendant's Exhibit A was

21                           offered in evidence.)

22          THE COURT:  Mr. Gaumer?

23          MR. GAUMER:  No objection.

24          THE COURT:  Are you clear what's encompassed in

25  Exhibit A?

1          MR. GAUMER:  I believe so, Your Honor.  I think that

2   was my copy originally, so I'm fine with it.

3          THE COURT:  Okay.  Thank you.

4          Well, then the letters submitted on behalf of

5   Mr. Zenor and the medical reports submitted will be entered into

6   the record as Defendant's Exhibit A.

7                            (Defendant's Exhibit A was

8                             received in evidence.)

9          THE COURT:  Let's talk then more specifically about

10  the presentence investigation report.  I found one small error I

11  wanted to bring to the parties' attention to make sure that it

12  is, in fact, an error.  That was in paragraph 12.

13         In paragraph 12 it recounts under the title or the

14  heading "September 17, 2015 Search Warrant," and then in the

15  body of that paragraph it says that the last time a child

16  pornography image was obtained was on September 7, 2015, two

17  hours prior to the execution of the search warrant.  From that

18  context I believe that that is a typographical error, that it

19  should be September 17th.

20         Mr. Gaumer, do you agree with that?

21         MR. GAUMER:  Yes, Your Honor.

22         THE COURT:  Mr. Sarcone?

23         MR. SARCONE:  Yes, Your Honor.

24         THE COURT:  Then the judgment will reflect that

25  there's a correction to that paragraph on the presentence

1  investigation report.

2          Other than that factual correction, Mr. Gaumer, have

3  you had the opportunity to review the presentence investigation

4  report?

5          MR. GAUMER:  Yes, I have, Your Honor.

6          THE COURT:  And did you have any factual objections or

7  corrections to the report?

8          MR. GAUMER:  No, I do not.

9          THE COURT:  Thank you.

10         Mr. Sarcone, same questions to you.  Have you had the

11 opportunity to review the presentence investigation report?

12         MR. SARCONE:  Your Honor, I have, and I have reviewed

13 it with my client as well.  We have no other factual corrections

14 other than what's set forth in our objection letter.

15         THE COURT:  And the objection letter as reflected in

16 the presentence investigation report writer's response, it

17 appears to me that those objections have been addressed.  Is

18 that your assessment as well?

19         MR. SARCONE:  Yes, Your Honor.

20         THE COURT:  Can you go over with the court how you

21 went over this document with your client?

22         MR. SARCONE:  Yes, Your Honor.  I believe that we sat,

23 I think at his kitchen table and went over the document

24 together.

25         THE COURT:  Thank you.

1          Mr. Zenor, we've been talking about the presentence

2    investigation report.  I understand you went over that with

3    Mr. Sarcone?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Do you agree with your attorney that there

6    are no additional objections to the facts that are contained in

7    this report?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  You have no corrections to make?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Then let's talk about the sentencing

12    guideline calculation included in the presentence investigation

13    report.  As we know, that is the starting point for determining

14    the appropriate sentence in this case.  The defendant's criminal

15    history category is I.  His adjusted offense level is 36.

16          Mr. Gaumer, does the government move for the third

17    level of acceptance of responsibility?

18          MR. GAUMER:  Yes, Your Honor.

19          THE COURT:  That motion is granted.  Then the total

20    offense level is 33.  Those calculations result in the following

21    advisory sentencing guideline range or ranges:  135 to 168

22    months of imprisonment, five years to life of supervised

23    release, and between 17,500 and 175,000 dollars in fine.

24          Does the United States have any objections to these

25    calculations?

1          MR. GAUMER:  No, Your Honor.  However, I would point

2     out -- this may become relevant later -- that there is a

3     guideline that talks about age being potentially a factor that

4     the court can consider under the guidelines for a departure, and

5     we do not seek that today.  I just want to note it for the

6     record that that guideline exists and potential applicability

7     although we're not seeking that here today.

8          THE COURT:  So you have no objection to the guideline

9     calculation as set forth in the presentence investigation

10    report?

11         MR. GAUMER:  That's correct.

12         THE COURT:  And the presentence investigation report

13    notes the guideline that you indicated, correct?

14         MR. GAUMER:  I believe so, yes, Your Honor.

15         THE COURT:  And no downward departure motion has been

16    filed?

17         MR. GAUMER:  No, Your Honor.

18         THE COURT:  Thank you.

19         Mr. Sarcone, do you have any objections on behalf of

20    the defendant to the calculations set forth in the presentence

21    report?

22         MR. SARCONE:  No, Your Honor.  We believe those

23    calculations are correct.

24         THE COURT:  Thank you.

25         Then the court turns to the question of departures.

1   Having found that the parties agree that the guideline range

2   applicable to this offense is as set forth in the presentence

3   investigation report, Mr. Gaumer, I just talked with you about

4   this, you are not seeking a traditional departure, correct?

5            MR. GAUMER:  That is correct, Your Honor.

6            THE COURT:  And, Mr. Sarcone, as well?

7            MR. SARCONE:  Your Honor, I think the court is

8   certainly free to use that as a basis for departure, although we

9   primarily argued in our brief that the court should grant a

10  variance.

11           THE COURT:  And, in fact, there's been no downward

12  departure motion filed consistent with the local rules or

13  practice?

14           MR. SARCONE:  That's correct, Your Honor.

15           THE COURT:  Okay.  Then we will turn to the issue at

16  hand, which is the determination of the appropriate disposition

17  of this case.

18           Does the United States wish to present any evidence in

19  support of its position?

20           MR. GAUMER:  No, Your Honor.

21           THE COURT:  Thank you.

22           Mr. Sarcone, does the defense wish to present any

23  evidence?

24           MR. SARCONE:  Nothing other than what we just

25  previously offered, Your Honor.

1            THE COURT:  Okay.  I have been informed that there was

2    perhaps a video or a live witness.  Are neither of those things

3    going to be presented today?

4            MR. SARCONE:  Neither of those will be presented, Your

5    Honor.

6            THE COURT:  Okay.  Then I'll turn to positions of the

7    interested parties as to the appropriate disposition of this

8    case.  The court mentioned previously that we have received

9    victim impact statements in this case.  Under the applicable

10   statute, those impact statements will be considered by the

11   court.

12           Mr. Gaumer, I understand that you've received a copy

13   of those statements?

14           MR. GAUMER:  That is correct, Your Honor.

15           THE COURT:  I had a question about the information

16   contained in your sentencing memorandum as to the specific

17   dollar amounts of restitution sought by the various victims.

18           MR. GAUMER:  Your Honor, I think we have an

19   understanding -- I think I understand the question and I think I

20   have a solution that would be agreeable to all parties.  What I

21   did when I prepared the sentencing memorandum for the United

22   States is I went into the database that our office has on each

23   case that went into the folder that said victim statements.  I

24   went through the electronic database, the electronic folder, and

25   I read those and I pulled that information out of various victim

1   impact statements or various letters that were provided to our

2   office either by the victims themselves or by advocates for the

3   victims, and then I tried to analyze it and put it into the

4   sentencing brief of the United States.

5           Your Honor, I haven't appeared before you previously,

6   certainly not in a child -- at all.  I don't know how many child

7   pornography cases you have done.  The question of how

8   restitution is to be calculated in child pornography cases can

9   be a confusing issue.  The Supreme Court endeavored a few years

10  ago in United States versus Paroline to address the issue.  From

11  my personal perspective, not speaking on behalf of the U.S.

12  Department of Justice, but I think the Supreme Court's case

13  might have made it even more confusing at times to try and

14  figure out how to calculate restitution in child pornography

15  because the standard is that we have to establish that there's

16  proximate cause between this case and the harm suffered by the

17  victims.  Certainly when the victims have been notified that

18  Mr. Zenor was looking at child pornography with them, they were

19  troubled by that, bothered by that and perplexed by that,

20  perhaps not to the degree that the restitution requests that

21  they have made, but certainly that there was an impact.

22          So that's how I derived the information in there and

23  that's kind of the analysis I endeavored to go through.

24  Nevertheless, talking to the probation office before these

25  proceedings began here today, it seems that there may perhaps be

1    a disconnect between the information that I reviewed and the

2    information that was reviewed by the probation office.

3              THE COURT:  And that the court has.

4              MR. GAUMER:  And that the court has.  So there's a

5    provision -- I don't have the specific citation, but I'm aware

6    of it.  There's a provision in Title 18 that permits the court

7    to hold open the question of restitution for 90 days after the

8    sentencing hearing in any particular case.

9              My recommendation, my motion to the court would be to

10   avail itself of that authority and hold the question of

11   restitution open so that Ms. Davidson and defense counsel and I

12   can go through, make sure we have all the same information and

13   the court has the same information to see if we could resolve

14   the issue, and if not we could come back before the court and

15   make an appropriate presentation as to the restitution request

16   made by the appropriate victims.

17             THE COURT:  My reading of the plea agreement indicates

18   that the defendant has agreed to pay appropriate restitution

19   ordered by the court; is that correct?

20             MR. GAUMER:  That is correct.  That is a standard

21   provision in our child pornography plea agreements.  The

22   question isn't whether the defendant will pay.  The question is

23   what he should pay to which victims, and that's what we need to

24   make sure we're all on the same page in analyzing.

25             THE COURT:  And just to be clear, you have yet to

1   provide the court with any numbers other than those that were

2   put in your sentencing memorandum?

3          MR. GAUMER:  That's correct.

4          THE COURT:  Thank you.

5          Mr. Sarcone, we're talking about victim impact

6   statements, but that necessarily brings us to the topic of

7   restitution.  What is your position on Mr. Gaumer's suggestion

8   that we hold open the issue?

9          MR. SARCONE:  We're in agreement with the government

10  that we do that, Your Honor.

11         THE COURT:  Thank you.

12         So the court will order that restitution be paid in an

13  amount to be determined within 90 days from the date of the

14  entry of today's judgment.

15         Any objection to proceeding in that way?

16         MR. GAUMER:  No, Your Honor.

17         MR. SARCONE:  No, Your Honor.

18         THE COURT:  And, Mr. Gaumer, I would request that you

19  provide the court and counsel with any documentation that you

20  have as to the amounts requested as soon as you can so that we

21  can address that promptly.

22         MR. GAUMER:  Absolutely, Your Honor.  I've already

23  spoken with Ms. Davidson.  We hope perhaps yet today to go back

24  to my office and compare materials that she has with what's in

25  our database and remedy any discrepancies and make sure that

1  information is provided to the defense and to the court.

2          THE COURT:  Thank you.

3          So having addressed the issue of victim statements,

4  Mr. Gaumer, I don't believe there are any victims present here

5  today?

6          MR. GAUMER:  That's correct, Your Honor.

7          THE COURT:  Would you like to be heard as to the

8  appropriate disposition, Mr. Sarcone?

9          MR. SARCONE:  Sure.  Thank you.

10         Your Honor, in this case we would ask the court to

11  grant a downward variance.  I think my sentencing brief sets

12  forth the reasons relatively adequately; but just to sort of

13  summarize what's contained therein, Mr. Zenor is a relatively

14  young man, began this offense as a juvenile.  The duration of

15  the offense was relatively short due in large part to the fact

16  that I mean he was apprehended or caught, but it was a short

17  duration of the offense.  The collection of child pornography as

18  compared to other offenders certainly I've seen in this court

19  was relatively small.

20         The enhancements that were applied, as the court is

21  aware from the defendant's sentencing memorandum, enhancements

22  generally are parsimony to separate more severe and culpable

23  offenders from others.  The statistics show that these

24  enhancements are applied in almost every child pornography case

25  these days.

1           We've asked the court to consider a variance with the

2   guidelines on policy reasons, frankly, any other reasons the

3   court sees fit to disagree; but we have set that out in our

4   sentencing memorandum.

5           Also, the literature on this type of offender suggests

6   that the recidivism rate is very low.  Mr. Zenor has been

7   evaluated by Dr. Cooper, Matthew Cooper, who previously worked

8   for the Iowa Department of Corrections.  He was assessed as a

9   low risk by him.  Much of his actions and behaviors are

10  explained within that report that I know the court has read.

11          Additionally, as the court can see behind us, there

12  are a multitude of family members and friends here that are

13  supporting Mr. Zenor.  I'm sure the court is aware in this

14  business whenever you're dealing with a case involving child

15  pornography, talking about it with anyone just naturally gives

16  them the heebie-jeebies, so to speak, and Mr. Zenor has been

17  open and honest with his friends and family.  He's been able to

18  rely on them, use them for support, use them to help him with

19  the things that he's learning in therapy and how to deal with

20  this particular issue that he has.

21          So, for all of those reasons and all of the reasons

22  contained within our sentencing memorandum, we think that the

23  government's recommendation in this case for a prison term of

24  three years and a supervised release term of 14 years is more

25  than adequate to address the provisions of sentencing and the

1  legal requirements the court is supposed to look at and, of

2  course, the laws contained within the court's -- or the

3  statute's sentencing provisions.  And we think that certainly is

4  not greater than necessary to achieve the purposes of sentencing

5  contained within the United States Court.

6          Thank you.

7          THE COURT:  Thank you, Mr. Sarcone.

8          And I appreciate the thoroughness of your briefing and

9  the fact that you attached the materials on which you relied in

10  your argument.

11          MR. SARCONE:  Thank you.

12          THE COURT:  Mr. Zenor, now is the time during the

13  hearing where you have the opportunity to speak.  You don't have

14  to say anything; but if you would like to, the court will

15  consider it.

16          THE DEFENDANT:  Your Honor, I would first just like to

17  note that what I've written down here is all in my words and

18  that I just needed it in front of me to help me speak.

19          I would like to start with a quick apology to Your

20  Honor and to the courtroom, but mainly I would like to say that

21  I'm sorry to my friends and to my family.  I'm sorry for the

22  actions that took place.  It was incredibly wrong and has not

23  only hurt myself deeply, but I've had to force my loved ones

24  into a situation which was unfair to them.

25          I was so scared that I would be judged by them and

1   that they would be disgusted by what I had done, but I was

2   shocked to see the understanding and forgiveness.  They are all

3   very loving and very supportive of me, so I shouldn't have

4   expected anything less.

5           I also apologize to my girlfriend, Sidney.  We have

6   been dating for two years now, and I had never told her about

7   what I was struggling with until the charges were brought forth.

8   I betrayed her and I lost her trust, and Sidney has been an

9   amazing girlfriend and has always supported me greatly.  Though

10  she was initially shocked and hurt, she understood and helped me

11  through this with amazing love and understanding.  I love her

12  very much, and I hope someday that I can spend the rest of my

13  life with her.

14          Everyone here has been very supportive of me and taken

15  very good care of me, and I'm very glad to have them all

16  watching over me.

17          About a year ago when the charges were brought to my

18  attention, I couldn't have been happier that I was caught.  I

19  had been struggling with this addiction internally, knowing that

20  it was wrong.  It had been causing me to be sick, to lose sleep

21  and to fall into a deep depression that left me wondering

22  whether my life was worth living.  I knew how wrong my actions

23  were, but I could do nothing to stop myself.  It was unfair to

24  myself and to those girls whose pictures that I had received.  I

25  didn't even stop to think about how serious what I was doing

1 | actually was.  Several times I had uninstalled all the images
2 | off my phone in hopes that they would disappear and that I would
3 | move on, but sadly I kept getting into my temptation and
4 | reinstall everything.  My greatest hope is that I didn't cause
5 | anyone else the pain that I was in.  I started cutting about a
6 | month before the charges were brought before me, hoping that it
7 | would be an escape from all of the pain.  All I accomplished was
8 | worrying my parents and my loved ones, and I apologize for that
9 | as well.  Without my loved ones I would be so lost.  So I thank
10 | you everyone very much for helping me and understanding.

11 | I have been attending therapy ever since the charges
12 | were brought to my attention.  In going to therapy I have
13 | learned all of the possibilities of what my actions could have
14 | and may have caused.  All I could do was weep and apologize for
15 | although I knew what I was doing was wrong, I never truly
16 | thought about how much damage I could have and may have caused.
17 | I used to pass it off saying that it was just a dumb part of my
18 | life; but in my sessions with my therapist, he has helped me
19 | come to realize that that wasn't the case.  It was a part of my
20 | life and a part of who I was, and I can now truly take full
21 | responsibility for what I have done.

22 | I have enjoyed my sessions and hope that they will be
23 | able to be continued, whether it's right away or in a matter of
24 | a few years.  I have been shown different ways on how to deal
25 | with the problems that I have been facing and problems that

1   could come up in the future.  My plans are to keep my phone that

2   has no Internet connection as I continue through my therapy and

3   treatment.  I also plan on staying very close with my counselors

4   so that they may help me if I start to struggle with this again.

5          After truly learning of the consequences of what I've

6   done, I can honestly say that it will never happen again.  One

7   of the coping mechanisms that I've come to find very helpful

8   when temptations arise is simply to go out on a walk or run to

9   clear my mind.  I have also been shown the importance of keeping

10  my faith strong and letting my loved ones in when I need their

11  help and support.

12         These past few months have been especially hard

13  because of my medical situation.  In late fall I was diagnosed

14  with Crohn's Disease, and this disease has made it very hard to

15  eat a normal diet and caused my weight to drop up to 30 pounds

16  in a matter of weeks.  It has been very uncomfortable and a

17  painful time going through my diagnosis and treatment.  I had an

18  upper endoscope, along with a colonoscopy, where they found

19  ulcers, scarring and confirmation of Crohn's in my large

20  intestine in the area of my right abdomen.  Sadly, we haven't

21  been able to perform an MRI to see if any other areas are

22  affected by the disease because the requirements have been too

23  hard for me.

24         We wanted to get the MRI done right after I had made

25  it to my maintenance level of my infusions, which I had just

1   reached on December 29th.  Every day I have to take three sets

2   of medications to help with my nausea, pain, and to help with

3   strengthening my intestines where the Crohn's has set in.  I

4   also take prescribed sleeping pills for the pain at night from

5   the Crohn's and for my depression that has kept me awake.  I

6   have also had to go to my doctor four times in the past few

7   months to receive my infusions of Remicade and which I am put on

8   IV for two hours at a time.

9          These treatments have greatly helped with keeping my

10  body feeling healthy and making me able to continue a healthy

11  diet.  The doctor has informed me that in order to maintain my

12  level of health, I must continue my infusions once every eight

13  weeks, with getting blood tests every three months, otherwise

14  the Crohn's may cause problems or may worsen my condition.  I

15  can only hope that I'm able to continue my treatment as

16  regularly as prescribed.

17          I have high hopes for my future.  I had been attending

18  culinary school for a year when this started, but I have been

19  taking a break because the stress from my charges made it too

20  hard to focus.  I have since been working at Johnston Noodle Zoo

21  where I have two great bosses, Joe and Kara Meints.  They have

22  showed me a lot and given me a great opportunity for experience

23  in the kitchen.  I have learned many new recipes and been taught

24  to put in the orders for restocking our food and disposable

25  products within the restaurant, which I have had the

1   responsibility of doing on my own for about the past four months

2   now.  I have also made what feels like a whole new family within

3   my work environment.  My co-workers have all been very helpful

4   and very supportive of my future goals, and I'm glad to have

5   learned new things from each and every one of them.

6         Last week I talked to Joe and Kara about the charges

7   that I am facing.  It was extremely difficult to do, but I was

8   relieved of how supportive and how understanding they were.

9   Every day they have been putting good thoughts my way and kept

10  my spirits high, and I'm very thankful to have worked under

11  them, and I hope to work for them and help them develop their

12  new restaurant in years to come.  And I would also like to

13  apologize to them if I have to take a break, but I know they

14  understand and I know they will also be happy to have me back in

15  the future.

16        I have plans to continue my education in culinary arts

17  and business management as soon as I possibly can.  I someday

18  hope to own a food truck or small diner or maybe even another

19  Noodle Zoo.  Cooking has always brought me a great joy for a

20  couple of reasons.  One is I like food like no other.  I love

21  all the flavors and the science of how everything comes

22  together.  I think it's truly amazing what all can be done and

23  what all is still left to discover.  I also enjoy cooking

24  because a good meal can change anyone's day to a good one.  I

25  love seeing people's satisfied faces when they enjoy a meal that

1   I have worked hard to prepare for them, and if they don't like

2   it, I'm here to learn what I can do to make it better.

3           For a large majority of my life, I've been in the

4   kitchen making simple things like pizza or pasta or cookies and

5   eagerly attempted the harder dishes, although they didn't always

6   come out great on the first try.

7           I spent a lot of my early life away on mission trips,

8   often to places where people have very little, with my church

9   and with my mother, and I have always made sure to plant myself

10  in the kitchen because of some the expressions of sincere and

11  pure joy in having a hearty meal that they normally might

12  struggle to get.  I hope I can get back out in the field soon to

13  see the smiling faces of the people we get the privilege of

14  helping and taking care of and to talk with the friends that I

15  have waiting for me there.

16          Thank you, Your Honor.

17          THE COURT:  Thank you, Mr. Zenor.

18          Mr. Gaumer, on behalf of the United States.

19          MR. GAUMER:  Thank you, Your Honor.

20          The United States in its sentencing memorandum

21  discussed a joint recommendation that we would like to make to

22  the court for sentencing in this case, and that is a

23  recommendation that is a substantial variance from what is

24  contemplated by the sentencing guidelines.  The guidelines

25  propose or recommend a sentence of between 135 and 168 months

1  imprisonment and a minimum of five years of supervised release,

2  up to a potential life term of supervised release.

3        Based on my experience in handling child pornography

4  cases in this district, Your Honor, the average term of

5  supervised release in the overwhelming majority of the cases is

6  around the neighborhood of ten years of supervised release.

7        So the United States has looked at all of the unique

8  factors of this particular case and tried to fashion a

9  recommendation to the court that it believes is sufficient but

10 not more than necessary to achieve the purposes of Title 18,

11 U.S. Code, 3553(a).

12       I've been doing child pornography cases, prosecuting

13 child pornography cases on and off since the early 1990s.  It's

14 been pretty much my full-time job for the last five years.  I

15 take child pornography cases very seriously.  The United States

16 Department of Justice takes child pornography cases very, very

17 seriously.  If this defendant were five, six years older at the

18 time of the offense, the United States might very well be in

19 here requesting that the court sentence the defendant to a

20 guideline sentence; but that is not what occurred in this case.

21 The defendant, I believe, was about 17 years old when he started

22 committing the offense.  I think we apprehended him when he was

23 18.  He's now I think 20 years old, if I did my math correctly.

24       We look at these cases, we look at the history and

25 characteristics of the defendant.  That includes the age of the

1  defendant.  We look at those factors not just here at

2  sentencing, the United States looked at those factors when we

3  decide whether or not to even prosecute this case, whether it

4  was one we should decline prosecuting, whether it was one we

5  should refer to the state to prosecute.

6          THE COURT:  Do you also consider those factors in your

7  charging decisions, Mr. Gaumer?

8          MR. GAUMER:  Absolutely, Your Honor, which is why the

9  defendant was only charged with possession of child pornography

10 though from the evidence, as reflected in the presentence

11 investigation report, he clearly distributed child pornography

12 as well, and there's a strong suggestion that he was involved

13 with the production of child pornography as well.

14         THE COURT:  Do those offenses have higher penalties

15 associated with them, including mandatory minimums?

16         MR. GAUMER:  The defendant, if he had been charged

17 with and convicted of distribution of child pornography, would

18 have faced a potential punishment of no less than five years

19 incarceration up to a maximum -- same maximum of 20 years, but

20 would have faced a mandatory minimum of five years.  If the

21 defendant had been prosecuted for production of child

22 pornography or sexual exploitation of a child, he would have

23 faced a potential punishment of 15 years, no less than 15 years

24 in prison, up to a potential maximum of 30 years in prison.

25         When we looked at the evidence in this particular

1  case, Your Honor, as far as the production is concerned, the

2  defendant's acts in which he apparently produced child

3  pornography were of a teenage boy asking other teenagers a

4  little bit younger than him to make sexually explicit images of

5  themselves and, unfortunately, that's something we see more and

6  more in today's society.  When we made our charging decision, we

7  did not think that was something that merited a case of someone

8  his age at the time of a mandatory minimum of 15 years in

9  federal prison.

10         Nevertheless, when we did look at what occurred in

11  this case, the United States decided that it was not a case that

12  we could ignore, it was not a case that merited referral to the

13  state, not a case that merited pretrial diversion, and it's not

14  a case that recommends the extraordinary recommendation, which

15  we're not going to make, of probation in this particular case.

16         And I'm referring to certain things in the presentence

17  investigation to the court, Your Honor, primarily on pages 4 and

18  5.  If we look there, the defendant uploaded, he distributed,

19  that is, 16 images of child pornography.  So he shared -- he

20  already had those.  He shared those.  He distributed those to

21  other people.  Of those 16 images of child pornography that he

22  shared with somebody else, ten of them depicted children under

23  the age of 10.  These are images -- and one, I believe, was of a

24  child who looks to be approximately four years old.  These are

25  not just images in his total collection of children lasciviously

1  exhibiting their genitals.  These are images and visual

2  depictions of children being sexually exploited and being

3  sexually assaulted.

4          Also on page 4 it talks about the quantity of images

5  that defendant had.  He had 1,294 images of evidentiary value.

6  Now, what that means in the context of our child pornography

7  investigations is that when the forensic analyst went through

8  and looked at the images that were on the media that was seized

9  from the defendant pursuant to the search warrant, the 1,294

10 images appeared to be minors.  They may not be child pornography

11 per se.  They may be what we call other sexual exploitation or

12 sexual -- child erotica is the term we specifically use, so it

13 may not show their genitals but may show the child's breasts or

14 rear end or they could be totally naked and it would not totally

15 meet the definition of child pornography.

16          There were 47 videos that were found as well in the

17 defendant's collection.

18          Turning to page 5, we quantify what's in paragraph 16.

19 By my count, there were 20 known series of child pornography

20 that were involved in this particular case.

21          And it's for those reasons that the United States

22 doesn't believe we could dismiss this case, we could handle this

23 case in a less serious manner.  We believe that a serious

24 sentence is appropriate in this particular case.

25          As I said before, the compelling factor that causes

1  the United States to make a recommendation of a non guideline

2  sentence and a substantial variance is the defendant's relative

3  youth, and it's our hope that with counseling and the support of

4  his family that after a term of incarceration of three years, he

5  will hopefully be deterred from engaging in this type of

6  behavior again, but we don't believe that type of deterrence is

7  sufficient.  We believe the defendant requires monitoring of his

8  behavior to help him through sex offender treatment and to help

9  him resist the temptations he unquestionably will have.

10        He spoke here today about how he at times realized the

11 wrongfulness of what he was doing, he would delete the

12 applications that allowed him to collect child pornography, he

13 would delete his collections, and then he would be back at it

14 again.  That history causes us grave concern, which is why we

15 recommend that he be on supervised release for a term of no less

16 than 14 years in order to help him with that.

17        The final thing I wanted to mention, Your Honor,

18 something that struck me from defendant's statement here

19 today -- and maybe I'm misinterpreting something; but as I sat

20 here and listened to him here today, I heard him apologize to

21 the court, I heard him apologize to his family, I heard him

22 apologize to his girlfriend, I heard him apologize to his

23 employer.  I don't think I heard him apologize to the victims in

24 this particular case.  Certainly he mentioned he realized that

25 what he did was wrong, but the reason it's wrong is because, as

1   the court is aware, that children were raped, children were

2   sexually assaulted, children were sexually exploited in these

3   videos and in these images, and what the defendant chose to do

4   is seek those type of images out and not only seek them out and

5   collect them but distribute them from other people -- or to

6   other people.

7          So I believe he gets it.  I'm not quite sure if he

8   gets it enough the seriousness of what he did to other people by

9   this crime.  This is not a victimless crime.  It was a

10  four-year-old.  There were other children as young as 10 who

11  were sexually abused, sexually exploited, sexually assaulted in

12  the images that the defendant chose to collect.  He was repulsed

13  by them but he chose to collect them.  And because of that, I

14  believe that the counseling that he would receive for the 14

15  years of supervised release would certainly be appropriate and

16  help him address a more comprehensive understanding of the

17  wrongfulness of his actions.

18         Therefore, Your Honor, based on the factors in

19  3553(a), looking at the age of the defendant, the support that

20  he has from his family, looking at the fact that he tried at

21  times to stop this conduct and then reengage, so he's been

22  struggling with it, and all of the other factors set forth in

23  the statute, the United States recommends a sentence of three

24  years imprisonment and 168 months or 14 years of supervised

25  release.

1            We weren't in a position to make that recommendation

2    in an 11(c)(1)(C) plea agreement.  We had discussions about

3    that.  It was my position in this particular case that I thought

4    it would be beneficial to have the presentence investigation

5    report done so we had more information upon which to rely on

6    prior to making a potential recommendation to this court.  I

7    think that's been useful, and that is the recommendation of the

8    United States.

9            THE COURT:  The court is required to consider a number

10   of factors before deciding on an appropriate sentence in every

11   case that comes before it, and those factors are set forth in

12   United States Code, Title 18, Section 3553(a).  Those include

13   the defendant's history and characteristics, the nature and

14   circumstances of this crime, the need for the sentence imposed

15   to reflect the seriousness of the offense, to promote respect

16   for the law, to provide just punishment, to provide adequate

17   deterrence from future criminal conduct both by this defendant

18   and by others who may contemplate committing such an offense, to

19   protect the public and to provide the defendant with needed

20   educational training or other needs in the most effective

21   manner.

22           The sentencing guidelines must also be considered, and

23   we talked about those at the outset of this hearing.

24           The court must also consider the need to avoid

25   unwarranted sentencing disparities among defendants with similar

1 records who commit similar crimes, the need to provide

2 restitution to any victims of the offense, and we've already

3 talked about that as well.

4        I may not talk about each one of the sentencing

5 considerations individually as I discuss the factors weighing

6 upon the court in determining the appropriate sentence in this

7 case, but I have considered each and every one of them whether

8 or not they're read into the record here today.

9        Ultimately the sentence imposed must be sufficient but

10 not greater than necessary to serve the purposes of sentencing.

11 In this case there are substantial mitigators.  Those mitigators

12 are the defendant's age.  He's 20 years old now.  He was 17 when

13 this offense began.  The defendant has no criminal history at

14 all, and the defendant has behaved well on pretrial release,

15 including engaging in treatment, having evaluations done at the

16 behest of his counsel.  I note that there were multiple

17 evaluations done.  I assume that the attorney concluded after

18 looking at the first one that perhaps additional self-reflection

19 was warranted because the defendant had not been completely

20 truthful with the evaluator.  The fact that he's participated in

21 treatment, has not engaged in any additional criminal conduct

22 and has abided by the terms of release are all factors favorable

23 to the defendant.

24        There are substantial aggravators as well that the

25 court has to consider under the rubric of 3553(a).  Many of

1   these are accounted for under the guidelines that result in the

2   guideline sentence that is, of course, only advisory and a

3   starting point for this court.  That includes the number of

4   images.  The number of images in this case as the prosecutor has

5   pointed out that were counted for purposes of the guidelines

6   were 61 images and 15 videos.  That's a subset of the 1,294

7   images of evidentiary value and 47 videos that were discussed

8   previously.  The 15 videos count as 75 images apiece because of

9   the nature of the videos.  This has been something that has been

10  critiqued in the guidelines by other courts and by academics and

11  was discussed in the defendant's sentencing memorandum.

12          In this case the court finds it probative that the

13  defendant sought out videos.  The presentence investigation

14  report reflects that Mr. Zenor stated he would upload more

15  pictures if another participant in the chat room would upload

16  more child pornography videos.  The person who he was chatting

17  with then did upload 16 videos, all of which appeared to contain

18  child pornography.  Of the 16 child pornography images uploaded

19  by Zenor, ten depicted images of children under the age of 10.

20  So his exchange involved still pictures of children under the

21  age of 10 for videos.  That is an aggravating factor.

22          Additionally, the defendant admitted, as reflected in

23  the presentence investigation report, that his collection at one

24  time contained over -- or approximately a thousand images of

25  what he considered to be child pornography.

1    The number of images is reflected in the calculation

2   of the guidelines.  The number of victims is not.  The images it

3   is argued -- was argued by defense counsel that the number of

4   images does not necessarily comport with a more serious crime or

5   more culpable defendant, but the number of images in this case

6   correlates with an increase in number of victims.

7    As the prosecutor pointed out, the presentence

8   investigation report in paragraph 16 shows approximately 20

9   identified victims, 20 different children depicted in those

10  images, children, not just images, but children.  That's after

11  the previous paragraph talks about how difficult it is to

12  identify children who are victims of these offenses.

13    Mr. Gaumer also discussed the fact that the offense

14  conduct in this case also involved distribution and production.

15  As I just discussed, the defendant sent still images to receive

16  video images.  He looked for videos, and he disseminated images

17  revictimizing the girls who were already depicted in those

18  videos again by sharing -- excuse me, in those images again by

19  sharing them with someone else.

20    The victim impact statements make clear how much that

21  dissemination affects them.  I'm quoting from some of these

22  victim impact statements now.

23    One states, Passing them on is worse because people --

24  by people looking for them it creates a demand that jerks like

25  her father feel a need to fill.

1          Another one says, Every time someone else sees

2     pictures or videos of me it feels like they are the ones who

3     hurt me to begin with.

4          Another one says, To make matters worse, once the

5     pictures are posted on the Internet, they cannot be eliminated

6     from others that have them or wherever he posted them.

7          That distribution is an aggravating factor.

8          The prosecutor also discussed the fact that the

9     production in this case involved asking for older juveniles to

10    produce child porn in the nature of images of themselves naked

11    to be sent via the Internet back.  And while that in and of

12    itself may be sexting or, unfortunately, all too common in our

13    modern society, that is under the federal statute production of

14    child pornography.

15         The nature of the images themselves are an aggravating

16    factor accounted for in the guidelines.  This is not a case of

17    sexting.  This is not a case of images of peer teens being

18    shared amongst peer teens.

19         It's difficult to talk about these images because of

20    their content, but it is necessary to fully and accurately

21    discuss the nature and circumstances of the offense that this

22    court has to consider in determining the appropriate sentence.

23         Children as young as three or four were being raped in

24    these images.  There were children being assaulted by multiple

25    men simultaneously in these images.  All of the images that were

1  counted for purposes of the guidelines were prepubescent minors,

2  individuals, girls under the age of 10.

3      This is not a case of misidentification.  The

4  presentence investigation report reflects that the forensic

5  examination of the defendant's cell phone indicated that these

6  images were saved under a folder labeled "Extremely Young,"

7  children younger than 10 being forced to perform oral sex on

8  adult men.  These are aggravating factors.

9      The guidelines account for these in increasing offense

10  level for sadistic or masochistic conduct or other depictions of

11  violence or, alternatively, which wasn't applied in this case,

12  based upon when an infant or toddler is involved in a case.

13      Other aggravators which in this case are potentially

14  more accurately reflected as a lack of mitigators are, unlike so

15  many defendants that we see in these types of cases, this

16  defendant was not a victim as a child.  This defendant suffered

17  no physical, sexual abuse as a child.  He clearly comes from a

18  loving and supportive family and has the support of his

19  environment and his friends, family and did as a child.  He also

20  does not have any substance abuse issues.

21      The court has considered these and other factors in

22  determining the appropriate disposition in this case after

23  having considered the statements made here in court today and

24  those submitted in writing by the parties.

25      Counsel, do you know of any legal reason why the court

1  cannot enter judgment at this time?

2          MR. SARCONE:  I do not, Your Honor.

3          MR. GAUMER:  No, Your Honor.

4          THE COURT:  Having considered all of the materials

5  submitted and based upon the court's review of the criteria set

6  forth in 18, United States Code, 3553 and the unique

7  circumstances of this case and for the reasons I have just

8  explained, it is the judgment of the court that the defendant

9  Noah Thomas Zenor is hereby sentenced to 120 months of

10  imprisonment.

11          That sentence is outside of the advisory guidelines

12  range and is imposed for the reasons that I previously stated.

13  This reflects a variance downward from the advisory guideline

14  range of three levels.  This is the sentence that the court

15  finds to be sufficient but not greater than necessary to address

16  the essential sentencing considerations.

17          The court weighed the recommendation of the parties

18  and agrees that a variance from the advisory guideline range is

19  appropriate in this case.  However, the court finds that the

20  extent of the variance advocated for by the parties is not

21  justified by these facts and is not warranted.  As previously

22  stated, the sentence imposed is sufficient but not greater than

23  necessary to address the statutory sentencing considerations.

24          The court also imposes a term of 120 months of

25  supervised release immediately to follow the term of

1   incarceration with conditions that I will explain shortly.

2           No fine is imposed based upon the court's conclusion

3   that the defendant does not have the ability to pay a fine.

4           Restitution will be ordered in an amount to be

5   determined consistent with the record previously made.  The

6   defendant agreed to pay restitution in his plea agreement.  This

7   is a mandatory restitution case, and the order will come

8   consistent with evidence presented by the parties as to the

9   appropriate amount of restitution to be ordered for the victims

10  that have been identified and sought financial remuneration.

11          A $100 special assessment on each count -- the single

12  count of conviction is due and immediately payable without

13  interest to the U.S. Clerk of Court for the Southern District of

14  Iowa.

15          Within 72 hours of release from the custody of the

16  Bureau of Prisons, the defendant shall report in person to the

17  probation office in the district to which he is released.  While

18  on supervised release, the defendant shall not commit another

19  federal, state, or local crime, shall not possess a firearm or

20  other destructive device, shall not possess a controlled

21  substance.

22          The defendant shall abide by the standard conditions

23  of supervision of release as set forth by the United States

24  Sentencing Commission, plus the special conditions as set forth

25  in paragraphs 99 to 107 of the presentence investigation report

1   to which there was no objection filed.

2        Mr. Gaumer, what is the government's position on

3   detention pending -- well --

4        MR. GAUMER:  Your Honor, I believe under law the

5   defendant needs to be detained pending the imposition of his

6   sentence and start his sentence unless the defense can prove

7   that there's clear evidence of extraordinary circumstances.

8        THE COURT:  Thank you.

9        Mr. Sarcone.

10        MR. SARCONE:  Your Honor, at this time we would be

11   asking the court to postpone the -- for lack of a better way to

12   put it, reporting date, Your Honor, presentation date.  My

13   concern is primarily that Mr. Zenor will end up spending a

14   significant amount of time at the Polk County Jail where it's

15   unlikely that he would get to continue on the course of

16   treatment.  He's due for another Remicade injection here within

17   the next couple of weeks.  So our request would be that he at

18   least be able to remain out of custody until the court's turn in

19   date.

20        THE COURT:  You acknowledge that the statute requires

21   extraordinary circumstances?

22        MR. SARCONE:  Yes, I do, Your Honor.

23        THE COURT:  Thank you.

24        The court denies the request for a subsequent release

25   date.  The court is confident that the United States Marshal

1   Service will make sure that the defendant has the appropriate

2   medical attention both before he's transported and after he's

3   designated to a Bureau of Prisons facility.

4         Mr. Sarcone, do you have any requests as to

5   designation or any other programming that you would like the

6   court to order to be considered by the Bureau of Prisons during

7   Mr. Zenor's term of incarceration?

8         MR. SARCONE:  I believe the only request we have, Your

9   Honor, is that he would be placed at a facility as close to Iowa

10  as possible that the Bureau of Prisons could manage.

11        THE COURT:  And that is a recommendation only.  The

12  court does not control where the Bureau of Prisons puts

13  individuals; but I can put in a recommendation to that effect.

14        I've heard both today and during the course of

15  reviewing the different materials that the defendant is

16  interested in the culinary arts.  To the extent that the Bureau

17  of Prisons considers the court's recommendation, would you like

18  to put in that he be allowed to participate in that type of

19  training?

20        MR. SARCONE:  Yes, Your Honor.  That would be

21  perfectly fine.

22        Thank you.

23        THE COURT:  Thank you.

24        So the judgment will reflect both a request for the

25  designation at a facility in close proximity to Iowa and for the

1  ability to participate in a culinary arts training program to

2  the extent that is available at his location.

3          There are no counts that need to be dismissed?

4          MR. GAUMER:  There aren't, Your Honor.  I apologize,

5  the court may very well have covered this matter, but I'm not

6  sure, but did we address the issue of forfeiture?

7          THE COURT:  We have not.  I understand by the plea

8  agreement and by the -- that the phone is to be forfeited; is

9  that correct?

10          MR. GAUMER:  Yes, Your Honor.

11          THE COURT:  Mr. Sarcone?

12          MR. SARCONE:  No objection to that, Your Honor.

13          THE COURT:  And the court will order forfeiture.

14          There wasn't a separate preliminary order provided,

15  was there?

16          MR. GAUMER:  I will have to check, Your Honor.

17          THE COURT:  I don't believe that I saw a preliminary

18  order of forfeiture, but with the defendant's consent and with

19  the record as it establishes, the court will order the

20  forfeiture of that phone.

21          That's the only thing to be forfeited, correct?

22          MR. GAUMER:  I believe so, yes, Your Honor.

23          THE COURT:  So the defendant is committed to the

24  custody of the Bureau of Prisons.

25          Mr. Zenor, you do have the right to appeal the

1    sentence that I've just imposed.  In order to do that, you need

2    to file a written notice of appeal within 14 days of the entry

3    of this judgment.

4            Do you understand this time limit for filing a notice

5    of appeal?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  Additionally, if you do not have the

8    ability to pay for an attorney, one can be appointed to you if

9    you qualify.  If you have any questions about that, you can

10   direct that to Mr. Sarcone.

11           Do you have any questions at this time?

12           THE DEFENDANT:  No, Your Honor.

13           THE COURT:  Counsel, are there any other matters that

14   I failed to address?

15           MR. GAUMER:  I don't believe so, Your Honor.

16           MR. SARCONE:  No, Your Honor.

17           THE COURT:  Anything further on behalf of the

18   government?

19           MR. GAUMER:  No, Your Honor.

20           THE COURT:  On behalf of the defense?

21           MR. SARCONE:  No, Your Honor.

22           THE COURT:  Mr. Zenor, I wish you the best moving

23   forward, sir.

24           That will conclude the hearing.

25           (Proceedings concluded at 2:45 p.m.)

1    C E R T I F I C A T E

2         I, the undersigned, a Certified Shorthand Reporter of

3    the State of Iowa, do hereby certify that I acted as the

4    official court reporter at the hearing in the above-entitled

5    matter at the time and place indicated.

6         That I took in shorthand all of the proceedings had at

7    the said time and place and that said shorthand notes were

8    reduced to computer transcription under my direction and

9    supervision, and that the foregoing computer transcription pages

10   are a full and complete transcript of the shorthand notes so

11   taken.

12        Dated at Des Moines, Iowa, this 2nd day of February,

13   2017.

14

15

16

17                           /s/ Terri L. Martin
                             CERTIFIED SHORTHAND REPORTER
18

19

20

21

22

23

24

25